John RATLIFF, Appellant,

v.

ALASKA WORKERS' COMPENSATION BOARD, Wright Schuchart Harbor/ASAG (Employer), and Wausau Insurance Companies (Insurer), Appellees.

No. 1126.

Supreme Court of Alaska.

July 3, 1986.

Arthur Lyle Robson, Fairbanks, for appellant.

Ralph R. Beistline, Ann E. Stoloff, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

Appellant John Ratliff appeals from the superior court's affirmance of the Alaska Workers' Compensation Board's (the "board") decision holding that he was entitled only to permanent partial disability benefits for a scheduled injury under AS 23.30.190(a)(2). Ratliff argues that his injury also should have been classified as a concurrent unscheduled permanent partial disability under AS 23.30.190(a)(20), or as a permanent total disability under AS 23.30.-180. Appellees Wright Schuchart Harbor/ASAG and Wausau Insurance Companies (referred to collectively as "Wright Schuchart") argue that the injury was properly classified as a scheduled injury and that Ratliff therefore may receive benefits only under the schedule.

Ratliff was employed as a pipe-fitter/welder for Wright Schuchart when he injured his right knee while working on January 13, 1983.

Ratliff was examined by Dr. Young Ha. Dr. Ha rated Ratliff's "lower extremity impairment" at 19% based upon American Medical Association guidelines and at 50% based upon Ratliff's subjective symptoms. Wright Schuchart averaged the two ratings and paid Ratliff permanent partial disability benefits for a scheduled knee injury based on a 35% impairment rating. Ratliff was initially paid $14,112 in permanent partial disability benefits in a lump sum and is currently receiving $329 per week in permanent partial disability benefits.[1] Apparently these benefits will soon be exhausted under the terms of AS 23.30.190(a)(2).[2] Ratliff was also previously paid $69,693 in temporary total disability benefits and $17,-828.95 in medical costs and vocational rehabilitation.

Ratliff completed a vocational rehabilitation program under the direction of Alaska Placement Services, Inc. ("APS"). He worked for six months in an on-the-job training program as a mechanical engineering technician for Sunfair Engineering Company ("Sunfair") and demonstrated potential for working as either a plumbing designer or a cost estimator. Although Sunfair had originally indicated it could offer Ratliff a full-time position, it did not do so because it did not obtain the contracts it had anticipated. APS then performed a labor market survey and located four local heating firms with which Ratliff might work as a cost estimator. Ratliff apparently never contacted these employers. Ratliff contends that his injury has virtually eliminated his earning capacity.

Ratliff petitioned the board, asking it to find that he had suffered an unscheduled injury under AS 23.30.190(a)(20).[3] The board denied the petition, stating that the legislature intended that scheduled awards be the exclusive remedy whenever applicable. The board found no evidence that Ratliff's injury resulted in disability to any

---

1. The initial lump sum payment was calculated by multiplying the 35% impairment rating with the then maximum allowable payment under AS 23.30.190(a)(2) of $40,320. This court declared such a calculation improper in *Providence Washington Insurance Co. v. Grant*, 693 P.2d 872, 877–78 (Alaska 1985). Apparently this is why Ratliff is receiving $329 per week, which is based on multiplying 66⅔% of Ratliff's average pre-injury weekly salary by the 35% impairment rating.

2. AS 23.30.190 as applicable at the time of Ratliff's injury provided:
 (a) In case of disability partial in character but permanent in quality the compensation is 66⅔ per cent of the injured employee's average weekly wages ... and shall be paid to the employee as follows:

 . . . . .

 (2) leg lost, 248 weeks compensation, not to exceed $40,320.
 AS 23.30.190 has since been amended to increase the maximum amounts and percentages for the schedule.

3. AS 23.30.190(a)(20), as applicable to Ratliff, provided that:
 in all other cases in this class of disability the compensation is 66⅔ per cent of the difference between [the injured employee's] average weekly wages and his wage-earning capacity after the injury in the same employment or otherwise payable during the continuance of the partial disability....
 AS 23.30.190(b) stated:
 Total compensation paid under (a)(20) of this section may not exceed $60,000.

part of his body other than to the right leg and no evidence that the effect of the loss of use of the right leg extended to other parts of his body and interfered with their efficiency. The board also stated that it was aware of no legal authority for it to grant an award based on a concurrent unscheduled disability.

Ratliff appealed the board's decision to the superior court, which affirmed. The superior court rejected Ratliff's argument that his injury should be treated as unscheduled because it was "total," extending beyond his right leg. The superior court concluded that substantial evidence supported the board's conclusion that there was no disability to any part of the body other than to the scheduled right leg. The court stated that there was no evidence demonstrating holistically debilitating effects of Ratliff's pain that might lead to a conclusion that the injury had an effect extending beyond the leg. The superior court also stated that Ratliff's subjective complaints of pain were accounted for in the 35% disability rating for the leg. The court further concluded that the fact that Ratliff had suffered extreme impairment of his earning capacity did not provide grounds for relief outside the limits provided by the schedule.

Ratliff now brings this appeal.

### I. Is Ratliff Limited to a Recovery Under the Schedule if His Knee Injury has Produced a Permanent Partial Disability?

Ratliff contends that the board's finding that the effect of his knee injury did not extend to other parts of his body only constituted a finding that AS 23.30.-190(a)(19)(B) was inapplicable. AS 23.30.-190(a)(19)(B) provides for a scheduled award for loss of use of a body part not otherwise provided for in the schedule. Ratliff further argues that this did not constitute a finding that he did not suffer an unscheduled disability under AS 23.30.-190(a)(20).

■ Ratliff advances the additional argument that his knee injury should be considered a concurrent unscheduled injury because it has rendered him practically unable to work, thereby causing him extreme economic disability. Ratliff cites our decision in *Providence Washington Insurance Co. v. Grant*, 693 P.2d 872 (Alaska 1985), as authority for his argument that a concurrent unscheduled disability should have been found in this case.

We think, however, that the board in its decision and order unambiguously found that Ratliff did not suffer an unscheduled injury. The crux of the board's decision is that Ratliff injured only his knee and that therefore the statutory schedule applies exclusively, so that Ratliff is limited in his recovery to the benefits provided for in the schedule even were he to suffer extreme economic disability.

We also agree with Wright Schuchart that although *Grant* allows for benefits for a scheduled injury to be awarded concurrently with benefits for an unscheduled injury, *Grant* does not control here. *Grant* involved, in addition to two scheduled injuries (leg and foot), another, separate injury that was clearly unscheduled (back injury). *Id.* at 875. It was in that context that both scheduled and unscheduled benefits were awarded concurrently.

■ In the case at bar, it is apparent that there is but one injury. Ratliff seems to argue that the fact that the knee injury has greatly disabled him from working somehow constitutes a separate "injury" from the knee injury itself. This begs the question, which is whether the fact that the economic impairment from this injury exceeds the benefits provided for in the schedule enables the employee to have his injury classified as "unscheduled," so that he can obtain benefits reflecting this greater economic impairment.

The argument in favor of applying the schedule exclusively in cases of permanent partial disability is simple and persuasive— the statute means what it says. The United States Supreme Court applied this reasoning in interpreting the similarly worded Longshoremen and Harbor Workers' Com-

pensation Act (LHWCA) in *Potomac Electric Power Co. v. Director, Office of Workers' Compensation Programs,* 449 U.S. 268, 101 S.Ct. 509, 66 L.Ed.2d 446 (1980).[4]

In *Potomac,* the Supreme Court, reversing the D.C. Court of Appeals, held that an employee who was permanently partially disabled due to a knee injury was limited to recovery under the schedule, and could not choose to recover under the non-schedule paragraph which measured benefits by loss of wage-earning capacity. The Court stated that the plain language of the statute indicated that Congress intended the benefits under the schedule to be exclusive when there was an injury that fell under the schedule. 449 U.S. at 273–74, 101 S.Ct. at 512. The Court noted that the schedule paragraphs and the non-schedule paragraph were all under the same section entitled "permanent partial disability." *Id.* at 274, 101 S.Ct. at 513. The Court pointed out that the statutory direction that preceded the schedule provided that compensation under the schedule *"shall* be paid to the employee, as follows." *Id.* at 274, 101 S.Ct. at 512 (emphasis in opinion). The Court also noted that the non-schedule, loss of wage-earning capacity paragraph was to apply in "all *other* cases," and stated that this language foreclosed reading the statute to apply to all of the foregoing (i.e., scheduled) cases as well. *Id.* at 274, 101 S.Ct. at 512–13 (emphasis in opinion.).

The Supreme Court then rejected the argument that such a construction would not fulfill the remedial purpose of the Act and that it would produce anomalous results that Congress probably did not intend. The Supreme Court pointed out that the Act represents a compromise between the interests of employers and employees. The Court stated that the use of fixed scheduled benefits as an exclusive remedy:

> [I]s consistent with the employees' interest in receiving a prompt and certain recovery for their industrial injuries as well as with the employers' interest in having their contingent liabilities identified as precisely and as early as possible.

*Id.* at 282, 101 S.Ct. at 517. The Court also recognized the incongruous results which the schedule could produce by over or undercompensating an employee for his true wage-earning loss. The Court stated, however, that this fact did not give it license to disregard the "compelling statutory language" and that it was up to Congress to re-examine the statute if anomalies were occurring frequently. *Id.* at 283–84, 101 S.Ct. at 517.

AS 23.30.190 contains the same "compelling statutory language" that was present in *Potomac.* AS 23.30.190(a) provides that scheduled benefits "shall" be paid "as follows" and AS 23.30.190(a)(20) applies in "all other cases." In addition, we have recently stated, in another context, that the legislative policy behind the schedule was to place "absolute limits on an employer's liability" by awarding "no more than specific amounts for specific disabilities." *Grant,* 693 P.2d at 878.

■ Given the language of AS 23.30.190, and the reasoning of *Potomac,* we hold that in the case at bar the scheduled permanent partial disability benefits provided for under AS 23.30.190(a)(2) for Ratliff's knee injury are the exclusive benefits that Ratliff can recover. There is no language in the statute remotely suggesting that the schedule and section (a)(20) are alternative remedies.[5] Thus we conclude that the su-

---

4. The Alaska Workers' Compensation Act is modeled after the LHWCA and this court has held that interpretations of the LHWCA are persuasive in interpreting the Alaska Act. *Cesar v. Alaska Workmen's Compensation Board,* 383 P.2d 805, 807 (Alaska 1963).

5. *See also Meadowlake Nursing Home v. Sullivan,* 253 Ark. 403, 486 S.W.2d 82, 82–83 (1972); *Graves v. Eagle Iron Works,* 331 N.W.2d 116, 118 (Iowa 1983); *Hardman v. City of Iola,* 219 Kan. 840, 549 P.2d 1013, 1017 (1976); *Doggett v.*

*Brunswick Corp.,* 217 Neb. 166, 347 N.W.2d 877, 880 (1984); *Hise Construction v. Candelaria,* 98 N.M. 759, 652 P.2d 1210, 1212 (1982). *Contra Jacks v. Banister Pipelines America,* 418 So.2d 524, 527–29 (La. 1982) (Compensation under the workers' compensation statute is an economic, not a medical, concept, based on the employee's loss of earning capacity. Therefore the schedule should be viewed as providing a presumed minimum loss in recognition of the likelihood that the loss of a body part will eventually result

perior court's affirmance of the board's holding that Ratliff did not suffer an unscheduled injury under AS 23.30.190(a)(20) was correct, since the legislature intended that the scheduled award be the exclusive remedy whenever applicable.

## II. *Ratliff's Assertions of Permanent Total Disability.*

Ratliff also argues that he is permanently totally disabled under AS 23.30.180 [6] and therefore his recovery should not be limited to the schedule. Wright Schuchart argues, however, that Ratliff did not raise this issue before the board and therefore should not be allowed to raise it here. Ratliff responds that the issue was included in his points on appeal. Ratliff argued to the superior court that he was totally disabled. The court rejected this argument, stating that the schedule was exclusive.[7]

 Ratliff did not raise the issue of whether he was totally disabled before the board and in fact expressly disavowed this as an issue.[8] Ratliff's Application for Adjustment of Claim indicates that the claim

was being made for temporary total and permanent partial disability. At the hearing before the board, Ratliff's attorney stated, "The permanent partial disability is what we are concerned with here. That's the only issue that we have before you." Ratliff's attorney indicated several times during the hearing that his goal was to try to get Ratliff's injury classified as an unscheduled permanent partial disability, so that Ratliff could be paid some percentage of his total temporary disability benefits.

Wright Schuchart's attorney indicated that at the pre-hearing conference the parties agreed that the only issue to be addressed at the hearing was whether Ratliff's permanent partial disability was to be classified as scheduled or unscheduled. Ratliff's attorney agreed that he did not want to discuss any other issue.

Given the foregoing, we reject Ratliff's argument that he is permanently totally disabled since this point was not raised below.

AFFIRMED.

---

in some loss of earning capacity, such that the employee should be compensated for that expected loss even if he does not presently have a loss in earning capacity. However, if the employee can prove an actual loss of earnings greater than the schedule presumes, he should be allowed to recover for that loss by electing recovery outside the schedule); *General Electric Co. v. Industrial Commission*, 89 Ill.2d 432, 60 Ill.Dec. 629, 433 N.E.2d 671, 673–74 (1982) (dicta); *Potomac Electric Power Co. v. Director, OWCP*, 606 F.2d 1324 (D.C. Cir.1979), *overruled*, 449 U.S. 268, 101 S.Ct. 509, 66 L.Ed.2d 446 (1980); *Potomac Electric*, 449 U.S. at 285–91, 101 S.Ct. at 518–521 (Blackmun, J., dissenting).

6. AS 23.30.180 as applicable to Ratliff provided:
 In case of total disability adjudged to be permanent 66⅔ percent of the injured employee's average weekly wages shall be paid to the employee during the continuance of the total disability. Loss of both hands, or both arms, or both feet, or both legs, or both eyes, or any two of them, in the absence of conclusive proof to the contrary, constitutes permanent total disability. In all other cases permanent total disability is determined in accordance with the facts.

7. The superior court did not make a finding whether Ratliff was totally disabled under AS 23.30.180.

8. If Ratliff had raised the issue below and was found to be totally permanently disabled, the scheduled benefits should not be exclusive. The definition of permanent total disability and the schedule provisions for permanent partial disability are found in separate subsections involving two separate types of disability. *See London v. Fairbanks Municipal Utilities, Employers Group*, 473 P.2d 639, 642 (Alaska 1970) (compensation for each category of disability reflects a unique set of policy considerations). AS 23.-30.180 provides that total disability is to be determined "in accordance with the facts." If the facts show that an employee is totally disabled so that AS 23.30.180 is applicable, the schedule becomes irrelevant. *See Potomac Electric*, 449 U.S. at 271 n. 4, 101 S.Ct. at 511 n. 4. Further support for this reading is provided by AS 23.30.190(a)(21), which states that loss of more than one body part under the schedule, *not amounting to permanent total disability*, is to be compensated as a scheduled loss for each member. (Emphasis added.)

The clear trend in other states has been to hold the schedule not exclusive when the injury has resulted in total permanent disability. *E.g., Meadowlake*, 486 S.W.2d at 83; *Graves*, 331 N.W.2d at 118; *Hise*, 652 P.2d at 1211; *Turner v. Jones & Laughlin Steel Corp.*, 479 Pa. 618, 389 A.2d 42, 45 (1978).