**FAIRBANKS NORTH STAR BOROUGH SCHOOL DISTRICT and Alaska Workers' Compensation Board, Appellants,**

v.

**Constance CRIDER, Appellee.**

**No. S–1380.**

Supreme Court of Alaska.

May 8, 1987.

Rehearing Granted in Part and Opinion Amended July 16, 1987.

Dennis E. Cook, Schaible, Staley, DeLisio & Cook, Inc., Fairbanks, for appellants.

James A. Parrish and Lance C. Parrish, Parrish Law Office, APC, Fairbanks, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

This is a dispute over the amount of permanent partial disability benefits to which appellee Constance Crider is entitled. In 1984 the Workers' Compensation Board awarded Crider $22,800 in compensation for a disabling back injury incurred in 1978 in the course of her employment as a school custodian. The extent of Crider's permanent disability was determined by her loss of earning capacity, measured by

the difference between her average pre-injury wage and the post-injury wage that she received in 1981 when her injury stabilized. The Board multiplied her 38% loss of earning capacity by $60,000, the maximum disability award then authorized by AS 23.-30.190(a)(20) and (b), to arrive at the $22,-800 award. This sum was made payable in bi-weekly installments rather than in a lump sum.

Before the Board and on appeal to the superior court, Crider claimed that her 1981 wages did not reveal the full amount of her lost earning capacity, relying on recent wage data for 1982–84 which supported a higher loss figure. In addition, she argued that she was entitled to recover the full $60,000 maximum award so long as her projected loss equalled or exceeded that amount. Finally, she requested that $60,000 be awarded to her in a lump sum rather than paid to her in installments.

The superior court accepted Crider's first two arguments but denied her request for a lump sum award. The Fairbanks North Star Borough School District and the Workers' Compensation Board bring this appeal. We agree with the superior court's decision: the Board is obliged to consider the most recent evidence of post-injury earnings available when calculating post-injury earning capacity; the Board must grant the $60,000 maximum award to Crider; and Crider has not shown that the Board's decision to deny her request for a lump sum award was erroneous.

I.

Crider's unscheduled permanent partial disability benefits were determined under AS 23.30.190(a)(20), which provided for compensation equivalent to 66⅔% of the difference between a claimant's average weekly pre-injury wage and her wage earning capacity after the injury.[1]

In *Hewing v. Peter Kiewit & Sons*, 586 P.2d 182 (Alaska 1978), we held that to fairly measure the difference between pre- and post-injury earning capacity, the Board must first eliminate substantial differences caused by inflation:

Where there is a substantial difference in wage levels, as there is obviously here, the post-injury earnings should be corrected to correspond with the general wage level in force at the time that pre-injury earnings were calculated, or the pre-injury earnings should be recomputed at the scale in effect at the time of the post-injury earnings.

*Id.* at 186 (footnote omitted). *Hewing* thus compels the Board to adjust either pre- or post-injury earnings for inflation.

The Workers' Compensation Board calculated Crider's post-injury wages at their 1981 level, then adjusted her pre-injury earnings upward to reflect 1981 wage levels. These adjustments eliminated any difference between the two figures that was caused by inflation.

However, the Board's figures did not recognize changes in wage levels that occurred after 1981. The record contains uncontradicted evidence that Crider's salary as a school custodian would have risen rapidly between 1981 and 1983, while salaries in Crider's post-injury positions as a housekeeper rose only slightly during this same period. Crider believes that these lost increases should be taken into account when calculating the full extent of her lost earning capacity. The School District, on the other hand, contends that Crider is not entitled to benefits based on wage increases occurring after 1981 because 1981 was the year in which Crider's injury stabilized.

We reject the School District's argument. The determination of lost earning capacity under AS 23.30.190(a)(20) is not limited to an examination of those losses that appear immediately after claimant's injury stabilizes. Instead, it requires the Board to use

---

1. At the time of Crider's injury, AS 23.30.-190(a)(20) read in part as follows:

   [T]he compensation is 66⅔ percent of the difference between his average weekly wages and his wage-earning capacity after the injury in the same employment or otherwise, payable during the continuance of the partial disability, but subject to reconsideration of the degree of the impairment by the board on its own motion or upon application of a party in interest.

all "available clues" to forecast the losses that the disabled claimant will incur over the course of her work life. *Hewing,* 586 P.2d at 186; *Vetter v. Alaska Workmen's Compensation Board,* 524 P.2d 264, 266 (Alaska 1974); 2 A. Larson, *Workmen's Compensation Law* § 57.21(b), at 10-96 to 10-97 (1986).[2] We have previously ordered the Board to consider evidence of wages earned four years after medical stabilization and the corresponding "increase in general wage levels since the accident" when determining lost earning capacity over the course of one's work life. *Hewing,* 586 P.2d at 186. At the time, we noted that evidence of wages and wage levels existing years after permanent disability begins might show that claimant's lost earning capacity had been overestimated and that his award should be reduced. This case presents the corollary situation in which recent wage data might demonstrate that claimant's loss of earning capacity has been underestimated and that her compensation should be increased.[3]

■ Evidence of wages and wage levels existing in 1982–84 show that Crider's lost earning capacity was underestimated by the Board. Crider did not simply lose the ability to perform custodial duties when she was injured, she also lost the rapid wage increases which accompanied a custodial position. The hourly wages that she has received as a housekeeper in the years following medical stabilization have not increased substantially. So long as her housekeeping positions fairly and reasonably reflect her post-injury earning capacity, the Board is obliged to compare them to the rising custodial wages that she could have received if she had not been injured, in order to determine the amount of earning capacity that she has lost.

## II.

The School District also argues that Crider's post–1981 earnings do not fairly reflect losses caused by her back injury. It points to evidence in the record showing that she left or refused jobs for reasons unrelated to her injury (including the taking of extensive vacations), thereby frustrating her own potential for advancement.

If the Board had determined that Crider's meager earnings in 1981–84 reflected her voluntary withdrawal from the labor market, it would have been justified in denying disability benefits to the extent of her withdrawal. *Bailey v. Litwin Corp.,* 713 P.2d 249, 256 (Alaska 1986) (claimant capable of working 2–3 more days per month than he had in the past); *see also Vetter v. Wagner,* 576 P.2d 979, 982 (Alaska 1978); *Vetter v. Alaska Workmen's Compensation Board,* 524 P.2d at 266–67. In fact, the Board found that the positions which Crider held between 1981 and February 1984 fairly and reasonably reflected the hourly wage that she was capable of earning after her injury.

■ It is not this court's function to re-weigh conflicting evidence when reviewing the Board's findings. The court need only find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Vetter v. Alaska Workmen's Compensation Board,* 524 P.2d at 267 n. 11 (citation omitted). After reviewing the evidence, we accept the Board's conclusion that the positions which Crider held between 1982 and 1984 fairly reflected her existing employable skills, and that her earnings in these employments reasonably reflected her post-injury earning capacity.

2. Larson writes:
   But the relevant period for post-injury earings melts away into the indefinite future. Obviously we cannot take an arbitrary period of, say, six months after the injury as conclusive, since for a multitude of reasons that period might be entirely nonrepresentative. On the other hand, we cannot wait out the rest of claimant's life to see what his average weekly wage loss ultimately turned out to be. The

   normal solution is to make the best possible estimate of future impairments of earnings, on the strength not only of actual post-injury earnings but of any other available clues. *Id.* (footnotes omitted).

3. The benefits of matching disability compensation to the disability in fact incurred outweigh the increased costs of administering those cases which must be reopened.

### III.

The award of $22,800 was reached by multiplying $60,000, the statutory maximum recovery,[4] by 38%, the degree to which Crider's earning capacity was impaired. This method of calculation was approved by the court in *Absher v. State, Department of Highways*, 500 P.2d 1004, 1006 (Alaska 1972).

*Absher* was overruled last year in *Bailey v. Litwin Corp.*, 713 P.2d at 257–58. We re-examined AS 23.30.190(a)(20) and held that it permits a claimant to recover the full $60,000 maximum compensation if the claimant will sustain that amount of loss or more before retirement. *Id.* at 258. The result in *Bailey* was foreshadowed by our decision in *Providence Washington Insurance Co. v. Grant*, 693 P.2d 872, 877–78 (Alaska 1985), which rejected the pro-rating of statutory maxima as to scheduled injuries and, in the process, overruled *Cesar v. Alaska Workmen's Compensation Board*, 383 P.2d 805 (Alaska 1963).

■ Appellants argue that the ruling of *Grant* and *Bailey* should not be applied to this case because the injury occurred well before the *Grant* decision. The disposition of their claim is controlled by *Suh v. Pingo*, 736 P.2d 342 (Alaska 1987), where the court held that a claimant may have the benefit of a retroactive application of *Grant* and its reasoning if she raised the arguments before the Board. Since Crider argued against a pro-rata reduction of the statutory maximum before the Board and preserved the point on appeal, she is entitled to the benefit of our holding in *Grant*. The superior court in this case correctly held that the reasoning in *Grant* was applicable and that the Board therefore erred by reducing the statutory maximum recovery in this case.[5]

### IV.

Crider argues that her case should be remanded to the Board for payment of a lump sum. The Board refused to order Crider's benefits paid in a lump sum, stating that "We have no evidence that the interest of justice would be served by a lump sum payment." The superior court affirmed, noting that Crider had not indicated any evidence in the record which supported a lump sum award.

■ We agree with the Board and the superior court. Payment of an unscheduled disability award is most commonly made over time. In *Bailey v. Litwin Corp.*, we explained:

> Ordinarily, compensation is paid on unscheduled injuries according to the formula set forth in AS 23.30.190(a)(20) until the $60,000 maximum is paid. Where, as here, the employee requests a lump sum, we hold that the Board should first determine whether it is in the interest of justice that a lump sum be paid.

713 P.2d at 258. Lump summing is restricted to the exceptional case in which claimant demonstrates that a lump sum award is in her best interests. *See Foster v. Wright-Schuchart-Harbor*, 644 P.2d 221, 224 (Alaska 1982) (conclusory assertion that lump sum is in the interest of justice will not support lump sum award); 3 A. Larson, *Workmen's Compensation Law* § 82.71, at 15–596 (1983).

■ Crider argues that a lump sum award is merited because she is receiving benefits at a weekly rate substantially smaller than her rate of loss. However, the versions of AS 23.30.190(a)(20) and AS 23.30.155(b) in effect at the time of Crider's injury provide for compensation in bi-weekly installments at the rate of two-thirds of claimant's actual loss. Under these statutes, *every* claimant who receives installment compensation receives it at a rate substantially smaller than the rate of loss.

We recognize that other jurisdictions award lump sums to claimants who intend to invest the money in business assets, job training, or a dwelling, 3 A. Larson, *Workmen's Compensation Law*, § 82.72(b), at 15–603 to 15–605 (1983 and Supp.1985), but Crider has not presented such plans to the Board. Nor has she presented evidence of

---

**4.** AS 23.30.190(b) provides that "[t]otal compensation paid under (a)(20) of this section may not exceed $60,000."

**5.** The author of this opinion and Chief Justice Rabinowitz concur in this result for the reasons stated in the dissent in *Suh v. Pingo*, 736 P.2d 342 (Alaska 1987).

any medical or other special need for a lump sum. Her argument that inflation creates a financial need for a lump sum has been almost uniformly rejected by other courts, since such a rule would require that all awards be made in lump sums during periods of inflation. *Id.* at 15–610 to 15–613.

Because Crider has not demonstrated exceptional circumstances meriting a lump sum award, the Board's and the superior court's denial of a lump sum award is affirmed.

## V.

Crider, as a successful workers' compensation claimant on appeal, is entitled to an award of full reasonable attorney's fees for the services of her attorney rendered on appeal to this court. Full reasonable costs are also allowed. The clerk is instructed to make such award forthwith. The foregoing is a less cumbersome method than that suggested in *Wien Air Alaska v. Arant*, 592 P.2d 352, 366 (Alaska 1979) under which the fees awarded by the court on appeal must await the ultimate determination of fees by the Workers' Compensation Board. That procedure is, therefore, disapproved.

The decision of the superior court is AFFIRMED.