Robert MORRISON, Appellant,

v.

AFOGNAK LOGGING, INC. and Alaska National Insurance Assurance Company, Appellees.

No. S-2338.

Supreme Court of Alaska.

Feb. 17, 1989.

---

Chancy Croft, Anchorage, for appellant.

Randall J. Weddle and Joyce Bamberger, Faulkner, Banfield, Doogan & Holmes, Anchorage, for appellees.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Chief Justice.

### FACTS

On October 31, 1983, appellant Robert Morrison injured his elbow and wrist while working for Afognak Logging, Inc. The injury was treated by Richard Garner, M.D., an orthopedic surgeon. On December 28, 1984, Dr. Garner rated Morrison's permanent impairment at 30%. Eighteen percentage points were assigned according to the American Medical Association's Guide to Evaluation of Permanent Impairment (AMA Guide) based on range of motion measurements. Dr. Garner then "arbitrarily" added an additional twelve percentage points because the injury was to Morrison's dominant hand and there was considerable joint roughening present.

On January 8, 1985, Afognak filed a Notice to Controvert Payment of Benefits with the Alaska Workers' Compensation Board (Board) indicating that it would pay benefits based only on the 18% impairment rating. It contended that this position was proper because it was consistent with the AMA Guide. On January 14, 1985, Afognak began paying permanent partial disability benefits in weekly installments to Morrison. The employer ceased paying benefits on August 8, 1985 when the total amount of the payments had reached $10,-685.12. At this point, the total benefits had reached what Afognak believed to be the maximum allowable compensation for loss of an upper extremity under AS 23.30.-190(a)(1) as calculated pursuant to the rule delineated in *Cesar v. Alaska Workmen's Compensation Board*, 383 P.2d 805 (Alaska 1963).

Afognak miscalculated the benefit rate that it intended to pay Morrison. Afognak mistakenly applied the 18% impairment rating to the AS 23.30.190(a)(1) maximum entitlement for arm injuries occurring after

January 1, 1984.[1] This maximum entitlement was $59,000.[2] However, the maximum statutory entitlement applicable at the time of Morrison's accident was $43,680.00.[3] A recalculation of the $10,685.12 that Afognak paid Morrison on the basis of the applicable entitlement, rather than the inapplicable entitlement, shows that Afognak actually paid Morrison at an impairment rating of 24.5%.

In February, 1985, Morrison filed an application for adjustment of claim with the Board. Morrison claimed that this court's decision in *Providence Washington Insurance Co. v. Grant*, 693 P.2d 872 (Alaska 1985) overruling *Cesar* should be retroactively applied to his case.

On April 6, 1985, at Afognak's request, Dr. Robert Lipke examined Morrison. Dr. Lipke, also using the AMA Guide, assigned a 20% permanent impairment percentage for Morrison's arm, and an 8% permanent impairment rating for his wrist.

On December 6, 1985, the Board found that Morrison was entitled to disability benefits based on a 25% partial permanent disability rating (PPD) of his arm. The Board further found that the disability benefits were properly calculated under the rule laid down by this court in *Cesar*, and that this court's decision in *Grant* should not be applied retroactively to this case.

Morrison appealed to the superior court the Board's decision as to the disability rating and the calculation of benefits. The superior court ruled that substantial evidence supported the Board's determination of a 25% PPD rating. The trial court also concluded that this court's decision in *Grant*, overruling *Cesar*, should be applied retroactively to this case. The superior court, however, deferred final action on this matter pending the outcome of *Suh v. Pingo Corp.* where a similar issue was pending before this court.

Following our decision in *Suh v. Pingo Corp.*, 736 P.2d 342 (Alaska 1987), the trial court upheld the Board's award of partial permanent disability benefits calculated under *Cesar*. The trial court found that Morrison did not fall into the group of workers under *Suh*, to which the rule in *Grant* would retroactively apply.

## I. IS THE BOARD'S 25% IMPAIRMENT RATING SUPPORTED BY SUBSTANTIAL EVIDENCE?

In reviewing decisions of the Board, we determine whether the Board's findings are supported by substantial evidence. We do not independently reweigh the evidence, but rather "determine whether there is substantial evidence in light of the whole record that a reasonable mind might accept as adequate to support the Board's conclusion." *Delaney v. Alaska Airlines*, 693 P.2d 859, 863 (Alaska 1985). *See also Beauchamp v. Employers Liability Assurance Corp.*, 477 P.2d 993, 997 (Alaska 1970); *Morrison–Knudsen Co. v. Vereen*, 414 P.2d 536, 542 (Alaska 1966). The superior court concluded that substantial evidence supported the Board's 25% PPD rating. We agree.

The treating physician, Dr. Garner, rated Morrison's impairment at 30%. Dr. Garner

---

1. Alaska Statute 23.30.190(a)(1) (1983).

Amended Chapter 70 SLA 1983 reads in pertinent part: "Sec. 16: This Act applies only to injuries sustained on or after January 1, 1984. Sec. 17: This Act takes effect on January 1, 1984."

Because Morrison's injury occurred on October 31, 1983, the 1983 amendment is inapplicable to this case. *See Hood v. State, Workmen's Compensation Bd.*, 574 P.2d 811, 815 (Alaska 1978) (applying to the Alaska Workmen's Compensation Act the principle that statutes are presumed to operate prospectively and will not be given a retroactive effect, unless by express terms or necessary implication, it clearly appears that that was the legislative intent).

2. Alaska Statute 23.30.190(a)(1) (1983).

3. Alaska Statute 23.30.190(a)(1) (1975). This Act became effective on May 22, 1975. Amended § 4 ch. 83 SLA 1975 at 5. *Accord Ratliff v. Alaska Workers' Compensation Bd.*, 721 P.2d 1138, 1139 n. 2 (Alaska 1986); *State Workmen's Compensation Bd. v. Delaney*, 615 P.2d 5, 7 (Alaska 1980); *Hood v. State, Workmen's Compensation Bd.*, 574 P.2d 811, 815 n. 3 (Alaska 1978).

Because Morrison's accident occurred on October 31, 1983, after the 1975 amendment came into effect and before the 1983 amendment came into effect, the 1975 amendment is applicable to this case.

assigned eighteen percentage points, following the AMA Guide, based on range of motion measurements. In a letter to Morrison, Dr. Garner indicated that the additional twelve percentage points were "arbitrarily added ... to account for joint roughness." Dr. Garner's notes also indicate that in adding the twelve percentage points he considered the fact that the injury was to Morrison's dominant hand.

Dr. Lipke rated Morrison's impairment at 28%, using the AMA Guide. Dr. Lipke found that Morrison's elbow injury resulted in a 20% impairment rating. In addition, Lipke found that there was an 8% impairment to Morrison's wrist.

The Board concluded that Morrison was entitled to a 25% impairment rating. The Board noted that the 12% added by Dr. Garner to his rating was at variance with the AMA Guide. First, the Board noted that the Guide already takes account of the fact that the injury is to the dominant hand. Next the Board noted that to the extent the added points were "for potential impairment as opposed to existing impairment, ... the rating departs from the AMA Guide." Accordingly, the Board deducted all twelve additional points added by Dr. Garner, leaving a rating of 18%. The Board then compared Dr. Garner's 18% rating for the impairment of the elbow to the 20% impairment rating assigned by Dr. Lipke. Because Dr. Garner expressed his impairment rating in the same terms as the AMA Guide, the Board adopted Dr. Garner's 18% rating for the elbow. The Board next noted that Dr. Lipke also assigned an 8% impairment rating for the injury to Morrison's wrist. Dr. Garner did not assign an impairment rating for Morrison's wrist. The Board accepted the 8% impairment rating given by Dr. Lipke. Using the tables provided in the AMA Guide, the Board combined the 18% rating for Morrison's elbow with the 8% rating for Morrison's wrist to arrive at a combined rating of 25%.

It was reasonable for the Board to reduce Dr. Garner's rating by the 12% which he "arbitrarily added." Further, the Board expressed an adequate reason for selecting Dr. Garner's 18% rating over Dr. Lipke's

20% rating. Under these circumstances, the Board's 25% PPD rating for Mr. Morrison is supported by substantial evidence.

## II. SHOULD PROVIDENCE WASHINGTON INSURANCE CO. v. GRANT RETROACTIVELY APPLY TO THIS CASE?

■ The benefits in this case were calculated under the rule laid out in *Cesar.* Under that rule, the maximum amount recoverable, pursuant to AS 23.30.190, is multiplied by the percentage of impairment to the body member or function to arrive at the maximum amount recoverable for a particular injury.

In *Grant,* we overruled *Cesar.* We held that "[t]he plain language of [AS 23.30.-190(a)(2)] does not require that the maximum amount recoverable be multiplied by the percentage of impairment to the body member or function. Instead, it states the maximum amount recoverable under the subsection without referring to the percentage of impairment." *Grant,* 693 P.2d at 877. The question presented in this case is whether the rule laid out in *Grant* should be retroactively applied so as to increase the maximum amount of benefits available to Morrison.

In *Suh,* we decided when *Grant* would be applied retroactively:

We hold that *Grant* applies retroactively to cases arising from disabilities sustained before January 25, 1985, the date of our decision in *Grant,* when the following circumstances exist: (1) the Workers' Compensation Board issued a PPD compensation award or PPD compensation commenced, whichever occurred earlier, on or after that date; or (2) a PPD compensation order was pending on appeal on that date, provided that the worker argued at the hearing before the Board that *Cesar* misconstrued AS 23.30.190 and preserved the point on appeal.

*Suh,* 736 P.2d at 343.

In this case, the Board issued a PPD award on December 6, 1985. This occurred after the date of the *Grant* decision. However, payment of scheduled PPD compensa-

tion based on a 24.5%[4] impairment commenced on January 14, 1985, before the date of the *Grant* decision. There was no PPD compensation order pending appeal at the time of the *Grant* decision. Thus, on its face *Suh* bars retroactive application of the *Grant* rule at least as to payments made based on the 24.5% rate.

However, the Board's award mandating payments at the rate of 25% was made after the date of the *Grant* decision. As to the one-half of one percent added by the Board, the question is whether *Suh* calls for retroactive application.

While there is no language in *Suh* that directly addresses this question, it is our view that the decision is best read as designed to preserve settled claims:

Workers who have been forced to wait for their PPD benefits until after the date of *Grant* are compensated at the higher post-*Grant* level; workers who have been compensated promptly for pre-*Grant* permanent disabilities are not. Employers who have begun payment before *Grant* are assured of the lower liability under pre-*Grant* law; employers who have delayed payment are not.

*Id.,* 736 P.2d at 347.

As to the one-half of one percent addition, Morrison fits into the category of workers who have been forced to wait for their benefits until after the date of *Grant* and Afognak falls within the category of employers who have delayed payment.

Functionally, there is no anomaly in applying *Suh* only to the one-half of one percent addition. It will result in payment as follows: 280 weeks × $333.91 per week × .5% = $467.47. Morrison is therefore entitled to total compensation of $10,685.12 + $467.47 = $11,152.59.

This result is consistent with both the Act and Alaska common law. "The purpose of the Workmen's Compensation Act ... is the provision of financial and medical benefits for victims of work-connected inju-

ries in the most efficient, most dignified, and most certain form." *Grant,* 693 P.2d at 876 n. 8 (quoting *Arctic Structures, Inc. v. Wedmore,* 605 P.2d 426 (Alaska 1979)). Additionally, the Act is to be liberally construed to effectuate its humanitarian purpose. *Burgess v. Lindley,* 504 P.2d 1023, 1025 (Alaska 1972).

It is undisputed that Morrison complied fully and in a timely manner with the Act and its subordinate regulations and procedures. His physician, Dr. Garner, rated Morrison's PPD at 30%. Afognak unilaterally reduced the PPD rating to 24.5% and began paying compensation at that rate. Subsequently the Board determined the PPD rate to be 25%.

As between Morrison and Afognak, Afognak must bear the risk that its unilateral reduction in Morrison's PPD rate might be subsequently overturned. The Act provides limited protection to employers against risks of overcompensation of employees' claims.[5] However, the Act provides no protection to employers against risks associated with under-compensation of employee claims. This is consistent with the humanitarian purposes of the Act. Morrison, not Afognak, was harmed by Afognak's under-compensation of Morrison's claim. Afognak must therefore bear the risk that subsequent changes in the PPD rate, or relevant law, might increase its compensation liability.

REVERSED.

4. *See supra* notes 1–3, and accompanying text.

5. Alaska Statute 23.30.155(j) provides: "If an employer has made ... overpayments of compensation, the employer is entitled to be reimbursed by withholding up to 20 percent out of each unpaid installment or installments of compensation due."