**Robert YAHARA, Appellant,**

v.

**CONSTRUCTION & RIGGING, INC., and Alaska National Insurance Company, Appellees.**

**No. S–5011.**

Supreme Court of Alaska.

April 30, 1993.

Joseph A. Kalamarides and Timothy MacMillan, Kalamarides & MacMillan, Anchorage, for appellant.

Shelby L. Nuenke–Davison, Davison & Davison, Inc., Anchorage, for appellees.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

MOORE, Chief Justice.

## I. INTRODUCTION

Robert Yahara injured his back in the course of his employment with Construction & Rigging, Inc., and sought reemployment benefits under the vocational rehabilitation provisions of the Alaska Workers' Compensation Act, AS 23.30.041. The Reemployment Benefits Administrator (R.B.A.) granted Yahara's request for benefits, and the Workers' Compensation Board (Board) affirmed the award. The superior court reversed the Board, finding that the medical opinion on which the Board relied did not constitute substantial evidence. We reverse.

## II. FACTS AND PROCEEDINGS

In June 1990, Yahara, a carpenter/welder for Construction & Rigging, injured his back while at work when he jumped from one barge to another. He sought medical treatment from Dr. Edward M. Voke, an orthopedic specialist. Dr. Voke ultimately diagnosed Yahara's injury as a herniated disc and arranged for Yahara to undergo physical therapy. From June through December, Dr. Voke saw Yahara at least eight times. Yahara also requested an eligibility evaluation for reemployment benefits under the vocational rehabilitation provisions of the Alaska Workers' Compensation Act, AS 23.30.041. The R.B.A. assigned Don Helper, a rehabilitation specialist, to perform Yahara's evaluation.[1]

From October through December, Yahara participated in the Body Ergonomics and Rehabilitation (BEAR) program as part of his physical therapy. During this time his ability to perform fairly strenuous activity improved significantly. In December, Forooz Sakata, the registered nurse/occupational therapist who oversaw Yahara, wrote Dr. Voke to report on Yahara's progress. Noting that according to the U.S. Labor Department's *Dictionary of Occupational Titles*,[2] the activity level of Yahara's job was Medium–Heavy, Sakata concluded that Yahara was "able to perform in at least Medium–Heavy level work at this time" and thus could return to full-time work as a carpenter/welder. In addition, Dr. Morris R. Horning, a BEAR program physician, reviewed computerized tests of Yahara's progress and concluded that Yahara's "work level" had increased from "light to medium" to "heavy." Horning, however, neither specifically predicted whether Yahara was strong enough to return to his original job, nor specifically applied the Department of Labor job activity level classifications.

In December Dr. Voke met with Yahara, Helper, and a representative of Construction & Rigging's workers' compensation carrier. At this meeting, Dr. Voke reviewed Ms. Sakata's report, but concluded that notwithstanding the BEAR program results, Yahara was capable of only light to medium duty work and therefore should not return to carpentry or welding. Dr. Voke also concluded that Yahara's permanent physical capacities would be insufficient for the requirements of Yahara's old job. Accordingly, the R.B.A., on Helper's recommendation, declared Yahara eligible for reemployment benefits.

Construction & Rigging challenged the decision. The Workers' Compensation Board affirmed the R.B.A.'s determination, concluding that Dr. Voke's opinion constituted substantial evidence for the decision

---

1. Alaska Statute 23.30.041(c) provides:
 If an employee suffers a compensable injury that may permanently preclude an employee's return to the employee's occupation at the time of injury, the employee or employer may request an eligibility evaluation for reemployment benefits.... The [Reemployment Benefits] [A]dministrator shall, on a rotating and geographic basis, select a rehabilitation specialist from the list maintained under (b)(6) of this section to perform the eligibility evaluation.

2. When predicting whether a job's physical demands exceed an employee's physical capacities for the purpose of determining an employee's eligibility for reemployment benefits, a physician must use the descriptions of physical demands provided in the U.S. Department of Labor's "Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles." *See* AS 23.30.041(e).

and that no abuse of discretion occurred. On appeal to the superior court, Judge David Mannheimer reversed the Board, holding that because Dr. Voke's opinion disregarded the BEAR results without stating the objective grounds for doing so, it did not constitute substantial evidence. Yahara appeals.[3]

## III. DISCUSSION

 Generally, a decision of the Workers' Compensation Board will survive a challenge if substantial evidence exists to support the Board's findings of fact. *Morrison v. Afognak Logging, Inc.*, 768 P.2d 1139, 1141 (Alaska 1989). Substantial evidence is that which a reasonable mind, viewing the record as a whole, might accept as adequate to support the Board's decision. *Id.* On review, the court does not independently reweigh the evidence. *Id.* Therefore, if the Board is faced with two or more conflicting medical opinions—each of which constitutes substantial evidence—and elects to rely upon one opinion rather than the other, we will affirm the Board's decision. *See Delaney v. Alaska Airlines*, 693 P.2d 859, 863–65 (Alaska 1985), *overruled on other grounds by Wade v. Anchorage Sch. Dist.*, 741 P.2d 634, 638–39 (Alaska 1987); *Whaley v. Alaska Workers' Compensation Bd.*, 648 P.2d 955, 958–59 (Alaska 1982); *cf. Hester v. Public Employees' Retirement Bd.*, 817 P.2d 472, 477 (Alaska 1991) (declining to interfere with the Public Employees' Retirement Board's weighing of conflicting medical opinion in a disability benefits case).

 In order to claim that Dr. Voke's opinion does not constitute substantial evidence, Construction & Rigging puts a peculiar twist on the eligibility standards for reemployment benefits. These statutory criteria state the form that medical opinions must take:

> An employee shall be eligible for benefits under this section upon the employee's written request and *by having a physician predict* that the employee will have *permanent physical capacities that are less than the physical demands of the employee's job* as described in the United States Department of Labor's "Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles"....

AS 23.30.041(e) (emphasis added). Subparagraph (p)(4) defines "physical capacities" as *"objective and measurable* physical traits."* AS 23.30.041(p)(4) (emphasis added). Construction & Rigging takes this definition and elevates it to a requirement that, where an "objective" test has been performed, a physician's opinion must conform to the results, or else have the support of another "objective" test. Because Dr. Voke refused to find Yahara fit to return to work, despite the BEAR results, Construction & Rigging argues that Dr. Voke breached AS 23.30.041(e) and (p)(4), and that the R.B.A. and the Board should not have accepted his opinion as substantial evidence.

 Because the issue to be resolved depends upon statutory interpretation, we shall independently consider the meaning of the statute. *Hood v. State, Workmen's Compensation Bd.*, 574 P.2d 811, 813 (Alaska 1978). In doing so we look to "the language of the statute construed in light of the purpose of its enactment." *J & L Diversified Enter. v. Municipality of Anchorage*, 736 P.2d 349, 351 (Alaska 1987). We will neither modify nor extend a statute if its language is unambiguous and expresses the legislature's intent, and if its legislative history reveals no ambiguity. *Alaska Public Employees Ass'n v. City of*

---

**3.** While the case was pending in superior court, in *Kirby v. Alaska Treatment Ctr.*, 821 P.2d 127, 129 (Alaska 1991), we held that the presumption of compensability, AS 23.30.120(a)(1), applied to claims for vocational rehabilitation. On rehearing, Judge Mannheimer found that Yahara had submitted evidence sufficient to raise the presumption. However, Judge Mannheimer concluded that Construction & Rigging successfully rebutted the presumption, and that subsequently Yahara failed to prove his case by a preponderance of the evidence.

Yahara appeals this finding. However, we need not reach this matter, because we find Dr. Voke's opinion to be substantial evidence supporting the R.B.A.'s decision. *See* Part III *infra.* Under these circumstances, no issue regarding the presumption of compensability arises.

*Fairbanks,* 753 P.2d 725, 727 (Alaska 1988).

 Under the express language of AS 23.30.041(e), medical evidence of eligibility must satisfy three requirements. First, the evidence must take the form of a *prediction.* Second, the person making the prediction must be a *physician.* Third, the prediction must compare the physical demands of the employee's job, as the U.S. Department of Labor describes them, with the employee's physical capacities. AS 23.-30.041(e).

The definition of "physical capacities" as "objective and measurable physical traits," AS 23.30.041(p)(4), simply demands that they be *capable of measurement.* While these provisions prevent a physician from creating "capacities" out of thin air, they do not require her to interpret a test result in only one way, nor do they prevent her from disagreeing with other professionals about the meaning of test results. The language of this provision is clear on its face, and legislative history reveals no contrary reading or ambiguity.[4]

 Applying these rules, the R.B.A. properly relied on Dr. Voke's opinion. What Construction & Rigging holds out as the "objective" results of the BEAR program are not the numbers themselves but rather Ms. Sakata's and Dr. Horning's analyses of them. Because Ms. Sakata is a nurse/occupational therapist, her report does not satisfy the requirement that a physician make the prediction. Dr. Horning's report, while classifying Yahara's work level as "heavy," does not explicitly predict that Yahara's physical capacities met or exceeded the physical demands of his job. Only Dr. Voke's opinion meets the demands of the statute.

Even if Dr. Horning's opinion met the statutory requirements of AS 23.30.041(e), the R.B.A. had the discretion to weigh Dr. Voke's opinion more heavily. *See Whaley*

*v. Alaska Workers' Compensation Bd.,* 648 P.2d 955, 958–59 (Alaska 1982). As the Board correctly stated, the R.B.A. could reasonably infer that in forming an opinion, Dr. Voke relied on his own training, experience, and knowledge of Yahara's condition. The Board's refusal to reweigh the evidence was thus a proper application of the substantial evidence test.

The decision of the superior court is REVERSED.

---

**4.** Construction & Rigging tries to support its reading of the statute with a discussion of the legislature's efforts to reduce litigation in workers' compensation cases, as reflected in the 1988 revisions of the Workers' Compensation Act, ch. 79, SLA 1988. However, this legislative history concerns provisions of the Act that are wholly unrelated to this case. Construction & Rigging offers *no* legislative history concerning the definition of "physical capacities" under AS 23.30.-041(p)(4).