OPINION
 

 MATTHEWS, Justice.
 

 I.
 
 INTRODUCTION
 

 Jim Amesen challenges decisions of the Alaska Workers’ Compensation Board holding that he was ineligible for reemployment benefits because he was trained as and acted as a real estate sales agent within the ten years preceding his injury; that his reason able wage earning capacity was $33,000; and that he was ineligible to claim two children as dependents in the calculation of his spendable weekly wage at the time of his injury.
 

 II.
 
 FACTS AND PROCEEDINGS
 

 Arnesen worked for Anchorage Refuse as a heavy equipment mechanic from 1984 until 1993. He injured his shoulder on the job in April 1993. Anchorage Refuse’s insurance carrier, Alaska National Insurance Company (Alaska National), paid Arnesen temporary total disability (TTD) payments of $558.66 a week from April 1993 until September 1993. In September 1993 Arnesen’s physician released him to work in a position as a real estate sales agent and broker, for which he held a current license. Amesen received temporary partial disability (TPD) payments of $216.87 from September 1993 until March 1994, followed by a lump sum permanent partial disability (PPD) payment.
 

 Arnesen requested reemployment benefits under AS 23.30.041. The Reemployment Benefits Administrator’s (RBA’s) Designee appointed Virginia Collins to conduct an eligibility evaluation. Collins concluded, after corresponding with Arnesen’s physician and conducting a survey of the real estate market, that Amesen was ineligible for reemployment benefits under AS 23.30.041(e). On the basis of her report, the Alaska Workers’ Compensation Board (the Board) denied Ar-nesen reemployment benefits.
 
 [1]
 

 Arneseris efforts in the real estate sales field translated into an approximate net income of $500 per month after September 1993, when he was released for that type of work by his doctor. The Board recognized this in addressing a claim by Arnesen for additional TPD benefits for the period during which he was working in real estate sales but before which he received a permanent partial impairment rating.
 
 [2]
 
 Nevertheless, the Board found, based upon Collins’s report concerning Arnesen’s eligibility for reemployment benefits, that Arnesen could have earned $33,000 annually if he had pursued employment with an established real estate company instead of working alone.
 

 Arnesen is a divorcé with two children, for whom he pays child support. His ex-wife has custody of the children and claims both children as dependents for tax purposes. As a result, Arnesen was considered by Alaska National to be single with one dependent, himself, for calculation of his benefits. Arne-sen questioned the propriety of this determination before the Board. The Board held that Alaska National properly based Arne-seris compensation rate on a single dependent status.
 

 
 *664
 
 Arnesen appealed to the superior court on the above issues. The superior court affirmed the holdings of the Board on all relevant issues.
 
 [3]
 
 Arnesen now appeals to this court.
 

 III.
 
 STANDARD OF REVIEW
 

 When the superior court acts as an intermediate court of appeal, we review the merits of the administrative decision without deference to the superior court’s decision.
 
 Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.,
 
 746 P.2d 896, 903 (Alaska 1987). Questions of law which do not involve any particular agency expertise are reviewed under the substitution of judgment standard.
 
 Id.
 
 Questions of law involving agency expertise are reviewed under the “reasonable basis test.”
 
 Municipality of Anchorage, Police and Fire Retirement Bd. v. Coffey,
 
 893 P.2d 722, 726 (Alaska 1995). Determinations of fact by an administrative agency are reviewed under the “substantial evidence” standard.
 
 Id.
 

 IV.
 
 DISCUSSION
 

 A.
 
 Is Real Estate Sales a Job Within the Meaning of AS 2S.S0.0H
 
 ?
 
 [4]
 

 Alaska Statute 23.30.041(e) provides:
 

 An employee shall be eligible for [reemployment] benefits under this section upon the employee’s written request and by having a physician predict that the employee will have permanent physical capacities that are less than the physical demands of the employee’s job as described in the United States Department of Labor’s “Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles” for
 

 (1) the employee’s job at the time of injury; or '
 

 (2)
 
 other jobs that exist in the labor market
 
 that the employee has held or received training for within 10 years before the injury or that the employee has held following the injury for a period long enough to obtain the skills to compete in the labor market, according to specific vocational preparation codes as described in the United States Department of Labor’s “Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles.”
 

 (Emphasis added.) Arnesen does not dispute that he has received training for, kept current a license for, and practiced real estate sales within the ten years before his injury. He nevertheless argues that real estate sales is not a job because income from real estate sales is based solely on commissions. Arnesen argues that the term “job” contemplates an employee being hired by an employer through a contract of hire, and that his real estate broker’s license was maintained merely as a “hobby.”
 

 We have previously held that, where a term used in a statute is not defined in that statute, “the plain or common meaning ... is controlling.”
 
 Tesoro,
 
 746 P.2d at 905. The American Heritage Desk Dictionary defines a job as a “regular activity performed in exchange for payment, especially a trade, occupation, or profession.” We believe that most people would consider a position as a real estate sales agent and broker — indisputably a trade, occupation, or profession — to be a job.
 
 [5]
 

 
 *665
 
 The Dictionary of Occupational Titles (DOT) contains entries for both real estate sales agent and real estate broker and recognizes that compensation is generally by commission. Anchorage Refuse argues that this is dispositive of the existence of these positions as “jobs” given the reference to the DOT in subsection .041(e). Whether or not it is dispositive, the DOT listing is certainly persuasive. It seems safe to say that the positions are “occupations,” given the DOT listing. Amesen attempts to make a distinction between an “occupation” and a “job.” Nothing in the statute or elsewhere suggests that the legislature intended the same distinction, or contemplated anything other than the common meaning of the word “job.”
 
 [6]
 

 Amesen does not have to work as a real estate sales agent or broker if he does not want to. If he wants a job as an employee for a fixed wage, he is free to search for one. But the purpose of the reemployment benefit scheme is to ensure that an injured employee has some skills with which he or she can earn a living after an injury. Arne-sen, a licensed real estate agent and broker, has such skills.
 
 [7]
 
 Whether he uses those skills in a self-employment situation or through an established real estate company is up to him. But under the terms of AS 23.30.041(e), he cannot provide a physician’s prediction that his permanent physical capacities are less than the physical demands of another job that exists in the labor market that he has held or received training for in the ten years preceding the injury.
 
 [8]
 

 We affirm the superior court’s holding that the Board properly denied reemployment benefits to Arnesen.
 

 B.
 
 Did, the Board Err in Imputing $33,-000 Income to
 
 Amesen?
 
 [9]
 

 Alaska Statute 23.30.200(a) sets an injured employee’s TPD compensation as a percentage of the difference between the employee’s spendable weekly wages before the injury and his or her wage-earning capacity after the injury in the same or another employment. Alaska Statute 23.30.200(b) provides:
 

 The wage-earning capacity of an injured employee is determined by the actual spendable weekly wage of the employee if the actual spendable weekly wage fairly and reasonably represents the wage-earning capacity of the employee. The board may, in the interest of justice, fix the wage-entering [sic] capacity that is reasonable, having due regard to the nature of the injury, the degree of physical impairment, the usual employment, and other factors or circumstances in the case that may affect the capacity of the employee to earn wages....
 

 Arnesen’s actual earnings after his injury as a real estate sales agent were approximately $500 per month. However, under AS 23.30.200(b), the Board found that those earnings did not fairly represent his wage-earning capacity: “[T]hat level of earnings is associated with the employee’s choice to work alone, after a considerable period of absence from full-time real estate sales, without funds for advertisements.” The Board fixed his wage-earning capacity at $33,000 a year. Arnesen challenges the Board’s decision.
 

 
 *666
 
 This court has noted with respect to the calculation of TPD benefits:
 

 [E]arning capacity and post-injury earnings are not synonymous- Actual post-injury earnings raise a presumption of actual earning capacity; the presumption may be rebutted with “evidence showing ■that they are an unreliable indicator of earnings capacity.” ... Actual post-injury earnings may be an unreliable indicator of earning capacity, especially where they are of a temporary or unpredictable character.
 

 Pioneer Constr. v. Conlon,
 
 780 P.2d 995, 997 (Alaska 1989) (citations omitted).
 

 The evidence offered by Anchorage Refuse to rebut the presumption consisted of the report submitted by Virginia Collins.
 
 [10]
 
 The Board found that Arnesen could have earned $33,000 per year “if as an experienced real estate salesperson he had pursued employment at an established real estate company.”
 

 The report by Collins incorporated information from, among other sources: a National Association of Realtors survey which listed by region median agent and broker compensation, which in each category was greater than $30,000; occupational outlook information from the Alaska Department of Education which reported that many new agents average about $1,500 per month but that full-time experienced agents can earn about $2,750 per month; wage rate information from the Department of Labor reporting essentially the same thing; and an Anchorage labor market survey in which Collins contacted twelve different real estate companies, most of whom indicated that there was a wide range of earnings by sales agents but that the Department of Labor figures were reasonable and that most agents would make between $30,000 and $40,000 annually.
 

 The legitimacy of the Board’s determination that Arnesen’s earning capacity was $33,000 per year rests, therefore, upon whether he could properly be considered an “experienced” real estate salesperson. Although Arnesen presented testimony that he was not an “established” salesperson, we do not independently reweigh the evidence concerning findings of fact by the Board.
 
 Yahara v. Construction & Rigging, Inc.,
 
 851 P.2d 69, 72 (Alaska 1993). The Board could have considered his long-time maintenance of both agent’s and broker’s licenses, and his operation of his own business, Arnesen and Associates, since the mid-1980’s, as evidence that he was experienced enough to make $33,000 per year. It also clearly considered that many of the obstacles he faced in terms of start-up costs were a result of his choice to work by himself rather than with a well-known larger firm, and that there were positions available with larger, established real estate firms in Anchorage.
 

 “Substantial evidence is that which a reasonable mind, viewing the record as a whole, might accept as adequate to support the Board’s decision.”
 
 Yahara,
 
 851 P.2d at 72 (citing
 
 Morrison v. Afognak Logging, Inc.,
 
 768 P.2d 1139, 1141 (Alaska 1989)). Given the degree of deference afforded findings of fact by the Board under the substantial evidence standard, we affirm the judgment of the Board.
 
 [11]
 

 C.
 
 Did the Board Err in Classifying Arnesen as Single with No Dependents?
 

 [12]
 

 
 *667
 
 1.
 
 Use of Internal Revenue Code
 

 Alaska Statute 23.30.220(a) provides in pertinent part: “The spendable weekly wage of an injured employee at the time of an injury is the basis for computing compensation. It is the employee’s gross weekly earnings minus payroll tax deductions. ...”
 

 Alaska Statute 23.30.265(23) defines “payroll taxes” as
 

 (A) the amount that would be withheld under withholding tables in effect on the January 1 preceding the injury under the Internal Revenue Code of 1954 as amended and regulations issued under the code, as though the employee had claimed the maximum number of dependents for actual dependency, blindness, and old age to which the employee is entitled on the date on which the employee is injured; and
 

 (B) the amount that is or would be deducted or withheld as of the January 1 preceding the injury under the Social Security Act of 1935 as amended....
 

 Arnesen challenges the calculation of his benefits, claiming that he should be considered to have two dependent children even though his ex-wife has physical custody of the children and claims the children as dependents on her federal income taxes under the provisions of their divorce decree. He argues that, since he pays child support under Alaska Civil Rule 90.3, his children are dependents.
 
 [13]
 

 Amesen’s argument fails. The statute is clear. If Arnesen cannot claim the children as dependents under the Internal Revenue Code, then he may not claim them as dependents for the workers’ compensation benefit calculation. The statute looks to the employee’s spendable weekly wage at the time of injury. That is an objective number: gross weekly earnings minus payroll taxes as defined in AS 23.30.265(23). The statute is concerned with how much money he takes home every week, not with how best to characterize his relationship with his children.
 

 Arnesen also argues that under the definition of payroll taxes, his deductions are calculated “as though the employee had claimed the maximum number of dependents ... to which the employee is entitled on the date on which the employee is injured.”
 
 See
 
 AS 23.30.265(23). He reasons that, since he
 
 could
 
 have claimed the children as dependents if he and his wife had agreed that he could do so, his maximum number of dependents should include the two children. This argument is meritless. Under the statute, the “maximum number of dependents ... to which the employee is entitled” is one. He is not entitled to claim the children as dependents because I.R.C. § 152(e) does not allow him to.
 
 [14]
 

 We affirm the superior court’s holding that the Board properly calculated Arnesen’s benefits under the statute.
 
 [15]
 

 
 *668
 

 2.Equal protection
 

 Arnesen also argues that, by not having his benefits calculated as if his children were dependents, he has been deprived of the equal protection of the law. He argues that the application of the benefit scheme creates two classes of people, custodial parents and non-custodial parents, without a fair and substantial relation to the workers’ compensation statute.
 

 Arnesen has not demonstrated an equal protection violation. As Anchorage Refuse points out, this court has considered an equal protection challenge to Civil Rule 90.3 and held that custodial and non-custodial parents are not similarly situated for purposes of child support.
 
 Coghill v. Coghill,
 
 836 P.2d 921, 929 (Alaska 1992). Custodial parents qualify for the personal exemption because they care for the children for the better part of the year.
 

 We affirm the ruling of the superior court that AS 23.30.220 and the calculation of Ar-nesen’s compensation based upon a single status with one dependent is constitutionally sound.
 

 V.
 
 CONCLUSION
 

 The decision of the superior court is AFFIRMED in all respects.
 

 [1]
 

 . The procedural history is actually more complicated. The Board first considered a less comprehensive report by Collins but remanded to the RBA’s Designee for a determination of whether real estate sales would return Amesen to remunerative employability under AS 23.30.041. Collins then supplemented her findings with a survey of the real estate sales labor market and concluded that work as a real estate broker would return Amesen to remunerative employa-bility; the RBA’s Designee again denied reemployment benefits, and the Board affirmed the denial in April 1994. Under this court's subsequent decision in
 
 Moesh v. Anchorage Sand & Gravel,
 
 877 P.2d 763, 765 (Alaska 1994), issued in July 1994, the remand would have been improper since remunerative employability is not a factor in determining eligibility for reemployment benefits.
 

 [2]
 

 . Alaska National had reduced its payments to Amesen in light of Collins's report.
 

 [3]
 

 . The superior court also held, in response to Anchorage Refuse’s cross-appeal, that the Board erred in using remunerative employability as a factor in determining eligibility for reemployment benefits.
 
 See supra
 
 note 1.
 

 [4]
 

 . The interpretation of AS 23.30.041, including the question of whether a position as a real estate sales agent and broker is a “job," is a question of law suitable to judicial determination
 
 de novo. See Tesoro,
 
 746 P.2d at 903.
 

 [5]
 

 . Arnesen argues that the inclusion of self-employment as a real estate sales agent or broker in the definition of "job" deprives him of “the rights and privileges of the employee-employer relationship.” These rights and privileges purportedly include the minimum wage protection of the Alaska Wage and Hour Act, from which commission-based sales agents are exempt.
 
 See
 
 AS 23.10.055(9). He implies that every “job” must include these protections. As a heavy equipment mechanic for Anchorage Refuse, Ar-nesen was entitled to the protection of the Alaska Wage and Hour Act. This does not mean, however, that he is entitled to perpetual protection under the Act. The very existence of the exemptions noted above indicates that there are "jobs” in the labor market that do not have those protections. That a position as real estate sales
 
 *665
 
 agent or broker is not a job subject to minimum wage protection does not mean that it is not a job.
 

 [6]
 

 . This court has previously noted that the DOT describes "jobs” in
 
 Yahara v. Construction & Rigging, Inc.,
 
 851 P.2d 69, 71 (Alaska 1993) (describing the application of “the Department of Labor
 
 job
 
 activity level classifications”) (emphasis added).
 

 [7]
 

 . To this extent, it is irrelevant whether Ame-sen’s operation of a sole proprietorship realty company was indeed only a “hobby," as he claims.
 

 [8]
 

 . Amesen also argues that self-employment is only an option after an employee becomes eligible for reemployment benefits because AS 23.30.041(i) lists self-employment as an option under the employee's reemployment plan if it will return the worker to remunerative employa-bility in the shortest possible time. But simply because self-employment
 
 is
 
 an option after eligibility has been established, does not mean it is an option
 
 only
 
 after eligibility has been established.
 

 [9]
 

 . The determination of Amesen’s reasonable earning capacity is an issue of fact to which the substantial evidence test should be applied.
 
 See Coffey,
 
 893 P.2d at 726.
 

 [10]
 

 . As noted above, the report and labor market survey were submitted only after Arnesen successfully, but in hindsight under
 
 Moesh
 
 erroneously, argued for a remand for a determination of whether the job would meet the remunerative employability standard. That the information was before the Board for a different purpose than to determine his earning capacity is irrelevant, however.
 

 [11]
 

 . Collins’s report indicated that there were numerous positions available with established real estate firms in Anchorage. Both she and the Board assumed that Arnesen could have acquired one of these positions had he tried. We accept this assumption here, noting that, given the relative nature of the substantial evidence concept, if Arnesen had been able to demonstrate that the positions in the established firms were not available to him, the report by Collins would be considered insubstantial because it would describe a labor market not open to Arnesen. Since Arnesen made no attempt to acquire one of these positions, however, we are left only with evidence that the positions existed.
 

 [12]
 

 .The use of federal tax dependency determinations is a question of law involving agency exper
 
 *667
 
 tise, subject to a "reasonable basis” standard of review.
 
 See Coffey,
 
 893 P.2d at 726;
 
 Pioneer Constr.,
 
 780 P.2d at 998 (holding Board's treatment of federal tax depreciation deductions subject to reasonable basis standard under which Board has "considerable discretion”). The constitutionality of the workers' compensation statute is subject to this court's independent review.
 
 See Keane v. Local Boundary Comm'n,
 
 893 P.2d 1239, 1241 (Alaska 1995).
 

 [13]
 

 .We note that, even if Amesen's argument were correct and we were to base his workers' compensation payments on what his spendable weekly wage would be if he had two more dependents, it would primarily affect his TTD payments, which are calculated as 80% of his spendable weekly wage. AS 23.30.185. His PPD payment would not be affected because it is calculated without reference to spendable weekly wage. AS 23.30.190. His TPD payment would not be significantly affected because it is based upon the difference between his spendable weekly wage at the time of injury and his wage-earning capacity after the injury. AS 23.30.200. No matter how many dependents he is credited with before the injury, he would have the same number of dependents after the injury. The effect on his withholdings would be similar, so the difference between his before and after wages would also be similar.
 

 [14]
 

 . Internal Revenue Code § 152(e)(1) and (2) provide that the custodial parent gets the personal exemption unless he or she releases the claim in writing.
 

 [15]
 

 . Arnesen points out that, if he were to be killed in a work-related accident, his children would receive death benefits under AS 23.30.215. But
 
 *668
 
 that statute provides that death benefits are payable to "children,” not to "dependents.” The death benefit provision has no relevance to the issue here.