Leon ROBINSON, Appellant,

v.

MUNICIPALITY OF ANCHORAGE,
Appellee.

No. S–10373.

Supreme Court of Alaska.

May 9, 2003.

Charles W. Coe, Law Office of Charles W. Coe, Anchorage, for Appellant.

Trena L. Heikes, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

FABE, Chief Justice.

## I. INTRODUCTION

Leon Robinson appeals the Alaska Workers' Compensation Board's denial of benefits related to back injuries that he allegedly suffered in 1992 and 1996 while working as a bus driver for the Municipality of Anchorage and the Board's refusal to rule upon the issue of whether Robinson's daily work aggravated his condition. Complicating this case is the fact that Robinson was also injured in a 1993 non-work-related automobile accident which he settled for over $47,000. Because substantial evidence supports the Board's finding that Robinson failed to establish that his work-related injuries continued to be a substantial factor in his back condition after he stopped receiving workers' compensation benefits, we affirm the Board's denial of benefits. And because it was not clear error for the Board to decline to answer the question whether Robinson's work aggravates his condition, we affirm the Board's decision requiring Robinson to file a new claim addressing this issue.

## II. FACTS AND PROCEEDINGS

### A. Factual History

#### 1. The 1992 slip-and-fall work-related injury

Leon Robinson has worked as a bus driver for the Municipality of Anchorage for over

ten years. On the morning of September 23, 1992, Robinson slipped on the stairs of the bus that he was driving. While grabbing the sides of the door to prevent himself from falling to the ground, he heard a popping sound in his back. Robinson finished his shift in the afternoon and went to the emergency room that evening complaining of back pain, primarily in the lower left area of his back and radiating down his left leg to his foot. The admitting doctor diagnosed Robinson with a "[l]ow back sprain ... associated with sciatica" and noted that Robinson "may well have a herniated disc," but the doctor also stated that "[t]here is no indication at this time of central herniation." The doctor referred Robinson to Dr. Declan Nolan for a follow-up appointment.

Dr. Nolan diagnosed Robinson as having "[a]cute lumbar strain and facet pain. Doubt disc syndrome. No radiculopathy." Dr. Nolan advised Robinson to take ten days off from work, to do gentle exercises, rest, and take prescribed medications. Robinson returned to work without restrictions on October 5, 1992, after using paid sick leave from September 27 through October 4, 1992. Robinson seeks compensation for wage losses from September 24 through October 5, 1992.

### 2. The 1993 non-work-related automobile accident

On December 22, 1993, Robinson's vehicle struck another vehicle, totaling Robinson's car. This accident was not work-related. Dr. Davis Peterson, who became Robinson's regular doctor and treated Robinson following this car accident, diagnosed Robinson with a right foot fracture, a contusion to his left knee from when his knees struck the dashboard, and "paraspinal muscle strain." Robinson also complained of pain to his right elbow and left thigh and back.

Robinson missed work from December 22, 1993 to March 1, 1994 because of his injuries. He was given paid sick leave from December 22 through January 7, 1994 and was granted medical leave without pay from January 10 through March 1. He initially claimed workers' compensation benefits for both of these periods but later waived these claims.

Sometime before May 1995 Robinson contacted the other driver's insurer, State Farm Insurance Company, seeking damages to compensate him for his injuries resulting from the car accident. Dr. Stephen Thomas, an orthopedist, was retained by State Farm to perform an independent medical examination to substantiate Robinson's claims. Dr. Thomas's report discussed only Robinson's foot and leg injuries. Dr. Thomas noted:

> Mr. Robinson states that prior [to] the motor vehicle accident he had been walking up to seven miles at a time for weight loss and had lost approximately 30 pounds and was down to about 245. He felt that he was doing well. Since the motor vehicle accident, the most he could walk was a mile and he states that after a mile he would have a lot of pain.

In April 1995 Dr. Peterson recommended that Robinson get a lumbar MRI. The lumbar MRI revealed nerve root irritation caused by a herniated disk. Dr. Peterson administered an epidural injection of steroids to treat this condition, but the injection was ineffective.

### 3. October 1995 surgery

Robinson had surgery to treat the herniated disk on October 11, 1995. According to Dr. Peterson's report, four weeks after the surgery, Robinson reported having "no back pain, still has some right lateral thigh numbness, some occasional spasming of both legs, but overall is markedly improved with respect to pain." Dr. Peterson noted in January and March of 1996 that Robinson reported experiencing some pain in his back, thigh, and right knee.

### 4. 1996 bus seat injury

On August 6, 1996, Robinson injured his lower back when the back of his bus seat collapsed. It is undisputed that this accident temporarily increased Robinson's symptoms. Dr. Peterson recommended physical therapy sessions, which Robinson attended several times in September and October 1996.

After Robinson obtained a second lumbar MRI in December 1996, Dr. Peterson advised him that "given his occupation as a professional driver it will be important for

him to" exercise his trunk and back daily. "He has to work 5 more years before retiring and I think he will probably be able to do this if he maintains adequate conditioning."

Robinson was relieved from his work duties to allow time for physical therapy in August and September 1997. He returned to work full time on January 4, 1998 after the Municipality refused to pay for further benefits. However, the Municipality modified Robinson's job by allowing him to work split shifts and take extended breaks. It appears that Robinson continues his work as a bus driver at present. Robinson claims that his back condition requires him to continue to take time off to recover and to see Dr. Peterson.

### B. Procedural History

#### 1. *Robinson v. State Farm Insurance Co.*

Robinson's attorney, Charles Coe, sent a series of letters to State Farm Insurance Company, the insurer of the other driver involved in the 1993 automobile accident, seeking compensation for Robinson's injuries. Although Robinson testified at the workers' compensation board hearing that his back was not injured in the 1993 accident and that he did not seek damages from State Farm related to his back, a July 1995 letter from Robinson's attorney to State Farm demanded "the policy limits plus Rule 82 fees and interest" for Robinson's expenses in traveling to Stanford and obtaining an MRI in May 1995,[1] and for the eight weeks of missed work that were expected to result from the recommended disc surgery. A September 1995 letter from Robinson's counsel to State Farm states that "his 1992 back strain was on the left side and normally described as a muscle strain. The 1993 injury is to the right side radiating into his right leg. He intends to have surgery in the next couple of weeks.... Once again we demand the policy limits, plus interest and fees." An October 1995 letter from Robinson's counsel to State Farm states that Robinson "is undergoing back surgery" and that "[h]e did not need surgery prior to this incident."

In December 1995 Robinson filed suit against the driver of the other vehicle for damages for "injuries to his back, foot, and leg," including "[e]xpenses and medication for medical treatment" and "[l]oss of wages." Robinson settled his claim against State Farm and its insured in March 1996 for approximately $47,000 for bodily injury, in addition to payments for property damage.

#### 2. Workers' compensation claims

On November 14, 1996, Robinson filed a workers' compensation application for out-of-pocket medical expenses and "time loss" due to his 1992 slip-and-fall back injury. He later amended that application to include claims relating to his 1996 bus seat injury.

Robinson had initially sought recovery for temporary partial disability (TPD) benefits and the cost of the 1995 surgery, but he later abandoned these claims, conceding that "his group insurer has paid for some incurred medical expenses."

In his hearing brief, Robinson argued that he should receive temporary total disability (TTD) benefits for the period from September 1992 to August 1996 and "[t]ime loss [in the form of TTD benefits] should be awarded after August 1996 for the periods where Dr. Peterson restricts [him] from working." In 1997 Robinson received TTD benefits for four weeks. Robinson also seeks "medical care for the 1992–1996 period, including his MRI in 1995 and the related travel expenses he incurred," as well as medical expenses after August 1996, including "all medications prescribed by Dr. Peterson, and all care provided, including the expenses related to the 1996 MRI." He further claims that a 13.5% permanent partial impairment (PPI), as assessed by Dr. Peterson, is more appropriate than the ten percent figure assessed by Dr. Smith "[i]n light of the new injury in 1996 and permanent increase in symptoms." Robinson argued that the 1992 and 1996 work accidents were substantial factors in causing his back condition and that the 1992 accident triggered a weakness in his back that gradually developed over time.

---

1. Because of Mr. Robinson's size, the MRI machine in Anchorage could not accommodate him, and he had to travel to Stanford University to have the MRI done.

On February 22, 1997, Dr. Thad Stanford, an orthopedic surgeon, examined Robinson at the Municipality's request. Also at the Municipality's request, Dr. Bryan Laycoe, an orthopedic surgeon, examined Robinson on October 31, 1997. The Board granted Robinson's request for a second independent medical evaluation (SIME) based on its finding that there is "a dispute between the attending physician [Dr. Peterson] and the employer's physicians [Drs. Laycoe and Stanford] regarding the causes of the employee's medical condition." Dr. Douglas Smith, an orthopedic specialist, performed the SIME in June 1998.

Both parties filed hearing briefs, and the Board heard Robinson's claim on December 2, 1999. For both the 1992 and 1996 injuries, the Board found evidence establishing a "preliminary link" between the work accident and the employee's injury and applied a presumption of compensability under *Meek v. Unocal Corp.*[2] The Board concluded that the Municipality had rebutted the presumption with substantial evidence in both cases and that Robinson had failed to prove his claim by a preponderance of the evidence.

Robinson petitioned the Board to reconsider his claim that "the employer is not entitled to notification or offset for the employee's third-party lawsuit under AS 23.30.015(k)." He also sought reconsideration of the Board's denial of benefits from August to November 1996 and its finding that Robinson's "physical therapist stated that he was potentially malingering." The Board denied Robinson's motion.

Robinson appealed to the superior court in February 2000. The superior court affirmed the Board's decision in full, finding that substantial evidence supported all of the challenged findings. Robinson appealed to this court.

**2.** 914 P.2d 1276, 1279 (Alaska 1996).

**3.** *DeYonge v. NANA/Marriott,* 1 P.3d 90, 94 (Alaska 2000).

**4.** *Arnesen v. Anchorage Refuse, Inc.,* 925 P.2d 661, 664 & 666 (Alaska 1996) ("Substantial evidence is that which a reasonable mind, viewing the record as a whole, might accept as adequate to support the Board's decision.") (citation omitted).

## III. STANDARD OF REVIEW

■ When the superior court acts as an intermediate court of appeal, "we independently review the merits of the administrative determination."[3] "Questions of law which do not involve any particular agency expertise are reviewed under the substitution of judgment standard[;][q]uestions of law involving agency expertise are reviewed under the 'reasonable basis test'[;][d]eterminations of fact by an administrative agency are reviewed under the 'substantial evidence' standard."[4] Thus, we "will not vacate findings of the Board when supported by substantial evidence. However, if the Board's decision rests on an incorrect legal foundation ..., independent review of the law is proper."[5]

■ On review, we will not reweigh conflicting evidence, determine witness credibility, or evaluate competing inferences from testimony because those functions are reserved to the Board.[6] Thus, even where there is conflicting evidence, we will uphold the Board's decision if it is supported by substantial evidence.[7] However, we must independently review the evidence and reverse the Alaska Workers' Compensation Board's decision where we "cannot conscientiously find that the evidence supporting that decision is substantial."[8]

## IV. DISCUSSION

### A. Burden of Proof

Alaska Statute 23.30.120(a) provides in pertinent part: "In a proceeding for the enforcement of a claim for compensation under [the Alaska Workers' Compensation Act] it is presumed, in the absence of substantial evidence to the contrary, that ... the claim comes within the provisions of the chapter."

**5.** *Childs v. Kalgin Island Lodge,* 779 P.2d 310, 313 (Alaska 1989).

**6.** *Id.* at 315.

**7.** *DeYonge,* 1 P.3d at 94.

**8.** *Bouse v. Fireman's Fund Ins. Co.,* 932 P.2d 222, 231 (Alaska 1997).

In *Temple v. Denali Princess Lodge,* we laid out the three-step presumption analysis that applies in workers' compensation cases:

> First, the employee must establish a preliminary link between the injury and the employment. This step of the analysis requires consideration of "only evidence that tends to establish the link." . . .
>
> In the second step, we inquire whether the employer rebutted this presumption with "substantial evidence that either (1) provides an alternative explanation which, if accepted, would exclude work related factors as a substantial cause of the [injury]; or (2) directly eliminates any reasonable possibility that employment was a factor in causing the disability." . . .
>
> As a third step, once the employer has rebutted the presumption that the injuries are work related, the employee can prevail only if he proves his claim by a preponderance of the evidence.[9]

The Board applied this three-step presumption analysis to both Robinson's 1992 and 1996 work-related injuries.

### B. Robinson Is Not Entitled to Workers' Compensation Benefits After May 1993 for Work–Related Injuries Sustained in September 1992.

■ Robinson first argues that his September 1992 work injury was a substantial factor in causing his current discomfort. With regard to Robinson's September 1992 work injury, the Board concluded:

> We agree with the SIME and conclude that the substantial evidence demonstrates the employee's September 1992 injury was a strain that resolved. We find the employee's need for medical care ended at the end of May 1993. We find his 1992 accident did not contribute to the employee's later medical conditions, need for treatment, or time off. We find the employee's subsequent "herniation" and back complaints were caused by the December 1993 car accident, which caused the employee to walk with an antalgic ga[it] and by his pre-existing disc degeneration. We conclude the employee has received all compensation benefits due and owing to him from

the 1992 accident. The employee's claim . . . is denied and dismissed.

In support of this determination, the Board relied on testimony of Drs. Smith and Laycoe indicating that Robinson's need for medical care ended after May 1993. It also cited evidence that Robinson's back complaints decreased in 1993 with his weight loss through exercise. The Board considered Robinson's testimony that "he was feeling 'pretty good' before the December 1993 automobile accident, walking up to six miles per day for exercise and had lost 37 pounds." Additionally, the Board found Robinson not to be a credible witness, pointing to the fact that in his lawsuit against State Farm he asserted that "his 1992 work accident produced merely a 'muscle strain' and 'he did not need surgery prior to this [automobile] incident.' The employee now seeks to be reimbursed again for those same expenses in these workers' compensation claims."

Robinson challenges the Board's decision. He contends that the record does not support Dr. Smith's opinion that the 1992 injury was "self-limited," and he seeks "TTD benefits from 1992 through August 1996" and "additional benefits for time loss and medical care from May 1993 until after his 1995 surgery." He argues that "[t]he 1992 injury triggered a weakness in [his] back that gradually developed over time, and was continually aggravated by his job as a bus driver." He asserts that "the weight of the evidence" indicates that the 1995 surgery and his current back pain are "directly related to this early accident and continuum of aggravations."

The Municipality does not contest the Board's finding that Robinson satisfied his burden of establishing a preliminary link between the 1992 and 1996 injuries and his employment. Thus, we turn to whether the Municipality "rebutted this presumption with 'substantial evidence that either (1) provides an alternative explanation which, if accepted, would exclude work related factors as a substantial cause of the [injury]; or (2) directly eliminates any reasonable possibility that employment was a factor in causing the dis-

---

**9.** 21 P.3d 813, 816 (Alaska 2001) (citations omitted).

ability.' " [10] Because we are reviewing an administrative agency's decision and because this is a question of fact, we apply the substantial evidence standard.[11] Therefore, we must determine whether the evidence presented by the Municipality, when viewed without consideration of Robinson's evidence to the contrary, is such that a reasonable mind would accept it as adequate to support the Board's conclusion that the work-related injury was not a substantial factor in Robinson's post-May 1993 condition.[12] The Board found that the Municipality offered substantial evidence which rebutted the presumption of compensability. We agree.

The Board relied on Dr. Laycoe's February 1997 report, Dr. Smith's June 1998 report, and Dr. Stanford's October 1997 affidavit, to which he attached his February 1997 report, in concluding that substantial evidence indicated that Robinson's need for medical care related to the 1992 injury ended in May 1993. Dr. Laycoe offered his opinion that the 1992 slip injury caused Robinson to need treatment "following September, 1992, over a six week period with occasional follow-up doctor visits into the spring of 1993. I do not believe that the 1992 injury was a substantial factor in his condition in August of 1996 ... [or] in causing Robinson's L5–S1 herniation." Dr. Laycoe concluded: "The progression of the degenerative disc disease at L5–S1 is a result of the degenerative disease and the surgery of October, 1995, and this is the sole responsibility for his worsening back pain over the years." Similarly, Dr. Smith, the SIME, concluded: "I do not find a connection between the 1992 industrial injury that is substantial relative to the need for care after May, 1993, or for the surgery in 1995" and that the 1992 injury "rapidly cleared" and "was relatively self limited." Dr. Stanford explained in an October 1997 affidavit that

the September 1992 injury probably did not cause the herniation nor the subsequent disability and need for medical care and surgery.... [T]he most likely cause[s] of Mr. Robinson's back pain, lumbar herniation and need for surgery [were] the injuries sustained by Mr. Robinson in the 1993 automobile accident ... and his pre-existing obesity.

Substantial evidence supports the Board's finding that the Municipality rebutted the presumption of compensability by offering an alternative explanation for Robinson's 1995 surgery and current back pain—namely, the 1993 car accident.[13] In addition to Dr. Stanford's opinion, the letters that Charles Coe, Robinson's attorney, wrote to State Farm concerning the 1993 car accident further support this alternative explanation. Coe notified State Farm by letter in October 1995 that Robinson planned to undergo back surgery and that "[h]e did not need surgery prior to this incident."

■ Because the Municipality has overcome the presumption of compensability, the presumption drops out. To prevail, Robinson had to prove to the Board, by a preponderance of the evidence, that the 1992 work injury was a substantial factor in causing his need for medical treatment and disability after May 1993.[14] "Where one has the burden of proving asserted facts by a preponderance of the evidence, he must induce a belief in the minds of the [triers of fact] that the asserted facts are probably true." [15]

Robinson points to Dr. Peterson's April 1997 report in support of his claim that the 1992 injury caused his current condition:

I believe there is a high likelihood that his initial slip produced the initial disc disruption that gradually progresses to bilateral disc herniation with radiculopathy requir-

---

10. *Id.*

11. *Id.* at 815.

12. *Id.* at 815–16.

13. *See Big K Grocery v. Gibson,* 836 P.2d 941, 942 (Alaska 1992) ("It has always been possible to rebut the presumption of compensability by presenting a qualified expert who testifies that, in

his or her opinion, the claimant's work was probably not a substantial cause of the disability.... [S]uch testimony is affirmative evidence that an injury is not work connected.") (citations omitted).

14. *Temple,* 21 P.3d at 816.

15. *Saxton v. Harris,* 395 P.2d 71, 72 (Alaska 1964).

ing microdisectomy. His motor vehicle accident may certainly have been a major contributing factor and, in fact, he probably had some degree of underlying disc degeneration, even preceding his slip on the bus steps.

... [A]t least part of this most likely is work-related and part of it should be assessed to the motor vehicle accident and some also should be considered pre-existing due to degenerative disease.

Dr. Peterson's testimony establishes only that the 1992 injury was one cause of Robinson's condition, but not that it is a substantial cause. Moreover, as the Municipality points out, "even Dr. Peterson, Robinson's treating physician, could not say the work injuries were substantial factors in Robinson's condition, disability, impairment, need for medical treatment or in any need for retraining." In his deposition, Dr. Peterson explicitly rejected the theory that the 1992 injury was a substantial factor in Robinson's present condition. When asked whether the 1992 injury was a substantial factor in Robinson's inability to drive a bus today, Dr. Peterson responded "I can't say that it is a substantial factor. It may be a factor, but I can't really weigh it as substantial."

▆ In addition, the Board concluded that Robinson was not credible because he claimed double recovery for his back injury. The Board's determination of a witness's credibility is given deference.[16] The Board noted that in his third-party lawsuit, Robinson attributed his back injury solely to the car accident and claimed damages for his back surgery and related medical expenses. Robinson then sought reimbursement from the Municipality for those same expenses. He also offered "contradictory testimony ... that the December 1993 automobile accident 'didn't play any [part]' in [his] subsequent back problems."

Because Robinson's treating physician, Dr. Peterson, does not advocate strongly the theory that Robinson's 1992 injury is a substan-

tial factor in his continuing discomfort and because Robinson attributed his back problems to the 1993 car accident during his third-party lawsuit, we conclude that the Board did not err in finding that Robinson failed to prove his claim based on his 1992 injury by a preponderance of evidence. We affirm the Board's ruling that Robinson received all compensation benefits due and owing to him from the 1992 accident.

### C. Robinson Is Not Entitled to Workers' Compensation Benefits After November 1996 for Work Related Injuries Sustained in August 1996.

▆ With regard to the August 6, 1996 work injury claim, the Board held that Robinson "has received all workers' compensation benefits due and owing [from August 6, 1996 through November 6, 1996]. Regarding the employee's claim that he is entitled to additional benefits after November 6, 1996, we find he has failed to meet his burden of proof." Citing evidence from Dr. Laycoe's report, the Board found that Robinson "suffered a lumbar strain in August 1996 that resolved in November 1996 and left no residuals." Thus, the Board found "no objective medical evidence [that] the employee suffered any permanent impairment due to this accident and there is no medical testimony that the employee's 1996 work accident was a substantial factor in the employee's need for medical treatment or additional benefits after November 6, 1996."

Robinson argues that his increased symptoms after the 1996 work injury are compensable as an aggravation of his preexisting condition. He claims that he should be awarded "temporary time loss benefits after August 1996 for the periods where Dr. Peterson restricted him from working, and all medications prescribed by Dr. Peterson, and care provided, including the expenses related to the 1996 MRI." Robinson maintains that he should be entitled to TTD and compensa-

---

**16.** AS 23.30.122 ("The board has the sole power to determine the credibility of a witness. A finding by the board concerning the weight to be accorded a witness's testimony, including medical testimony and reports, is conclusive even if the evidence is conflicting or susceptible to con-

trary conclusions."); *Norcon, Inc. v. Alaska Workers' Comp. Bd.*, 880 P.2d 1051, 1054 (Alaska 1994) ("Deference should be given to the Alaska Workers' Compensation Board's determination of witness credibility.").

["

November 1996,[20] it is not our role to reweigh the evidence.[21] Because substantial evidence supports the Board's finding that Robinson failed to prove his claim for benefits from his August 1996 work injury by a preponderance of the evidence, we affirm the Board's decision to deny his claim for additional TTD benefits stemming from the August 1996 injury.

In addition to temporary total disability, Robinson also argues that he is entitled to partial permanent impairment benefits stemming from the 1992 and 1996 work-related accidents. A claimant is entitled to partial permanent impairment if the injury is "partial in character but permanent in quality."[22] Dr. Smith concluded that although Robinson suffers from a 10% whole person permanent impairment, that impairment is not related to either the 1992 or 1996 injury,[23] and that Robinson became medically stable in November 1996. Dr. Stanford rated Robinson's PPI at 10% and could not attribute this rating to the 1992 injury. Dr. Peterson rated Robinson's PPI at 13.5% because "he's at high risk for future problems, further increased risk of disk herniations, [and] recurring back injuries," and he recommended that Robinson be retrained. When asked whether the 1992 injury was a substantial factor in causing Robinson's permanent impairment, Dr. Peterson stated that "this whole process is multifactorial." Substantial evidence supports the Board's finding that Robinson failed to establish by a preponderance of evidence that his work in-

juries were a substantial factor in his permanent impairment. Accordingly, we affirm the Board's denial of PPI benefits.

### D. Robinson Failed To Adequately Raise the Issue of Whether His Daily Work as a Bus Driver Aggravates His Back Condition.

In his hearing brief to the Board, Robinson argued that "there is no question that [his] driving for the city aggravated his back ..., which would further warrant an award of benefits." The Board ruled that Robinson had not properly raised this issue:

> The employee never filed a claim seeking benefits for such an occupational aggravation and there was little argument or evidence presented regarding this allegation. It is not clear to us whether the employee is claiming cumulative trauma or rather alleging that specific incidents caused new claims for time loss and the need for further medical care. The employer appropriately relied on the employee's claims in preparing its defenses and accordingly did not obtain a medical opinion regarding whether or not the employee's work as a bus driver was a substantial factor aggravating his condition.

Because the Board did not have enough evidence to properly evaluate the issue of occupational aggravation, it declined to rule on that issue. Instead, it retained jurisdiction to consider the issue and instructed Robinson to file a workers' compensation claim form specifically raising that issue, if he so de-

---

**20.** In an October 1997 letter, Dr. Peterson wrote that Robinson was not medically stable as of that date. He elaborated: "[Robinson] has stabilized since driving discontinued. If permanently reassigned, or retired from driving, [Robinson] would be considered stable as [symptoms] are exacerbated & [Robinson] deteriorates [with] driving."

**21.** Robinson argues that because he went to physical therapy after November 1996, he was receiving "additional medical care" within the meaning of AS 23.30.395(21) and so he could not be declared medically stable. However, the fact that he received treatment is insufficient evidence of medical instability absent a reasonable expectation of objectively measurable improvement from that care. AS 23.30.395(21). The physical therapist treating Robinson noted that his "[s]ubjective complaints do not equate [with] objective changes" and that "[s]econdary gain

issues may come into play." Given this evidence that Robinson may be malingering, the Board did not err in concluding that he was medically stable due to the lack of objective evidence of continuing improvement.

**22.** AS 23.30.190.

**23.** This is consistent with the Municipality's argument in its hearing brief: "The employer does not dispute that the employee may be unable to work as a bus driver for the Municipality due to his physical condition, which includes narcolepsy, obesity, low back pain, diverticulitis, carpal tunnel, hernias and a host of other non-work related conditions. The employer does not believe, however, the 1992 and 1996 injuries are substantial factors in the need to change occupations."

sired. We agree with the Board that if Robinson's daily work, as opposed to the 1992 and 1996 work injuries, is an aggravating condition for him, he needs to articulate that in a new workers' compensation claim. We hold that it was not an abuse of discretion for the Board to require a new claim.

### E. The Board Did Not Err in Denying Robinson's Motion for Reconsideration.

Alaska Statute 44.62.540(a) provides that an agency "may order a reconsideration of all or part of the case on its own motion or on petition of a party." The Board denied reconsideration on all three of the issues raised in Robinson's motion for reconsideration. Robinson argues that the Board erred in denying reconsideration on whether the Municipality is entitled to notification or offset of benefits from August to November 1996 and on whether he is entitled to additional benefits.

 With regard to the offset issue, the Board asserted in its final decision and order, "[t]o the extent the employee pursues additional compensation benefits the [employer] may be entitled to a credit, but we do not address the issue at this time." The Board concluded in its order on reconsideration: "Since we did not order any credit or declare the employer was due a credit, and we expressly declared we would not address the issue, there is nothing for us to reconsider." [24] Neither party raised the issue of whether the Municipality was entitled to a credit in the hearing briefs, and the Municipality never raised it at the workers' compensation hearing. Because the issue was not briefed by the parties, it was not squarely

before the Board, and the Board did not err in declining to address the issue.[25] And as the Municipality correctly points out, "even if the Board somehow erred in its comments, the error is harmless as no decision was rendered and the matter was left for the parties to raise and argue in the future."

With regard to the 1996 compensation issue, we affirm the Board's denial of reconsideration because substantial evidence, as discussed above with regard to the 1996 injury, supports its decision.[26]

## V. CONCLUSION

Because Robinson failed to establish his claims by a preponderance of the evidence, we AFFIRM the Board's denial of additional workers' compensation benefits. In addition, because it was not clear error for the Board to decline to rule upon the issue of whether Robinson's daily work as a bus driver aggravates his condition, we AFFIRM its decision to require Robinson to file a new claim that addresses this issue.

---

**24.** The Board's statement that the employer may be entitled to a credit was a gratuitous remark with no legal effect.

**25.** *Legge v. Greig*, 880 P.2d 606, 609 (Alaska 1994) ("An issue given only cursory treatment in a brief will be treated as abandoned.").

**26.** We note that while substantial evidence does exist to support the Board's decision, its assertion that "[w]e could find no objective medical evidence the employee suffered any permanent impairment from his 1996 accident, and there was no medical testimony the employee's 1996 work accident was a substantial factor in the

employee's need for medical treatment or additional benefits after November 6, 1996" seems overstated. The Board recognized in its first decision that some evidence suggested that Robinson's current discomfort stems from the 1996 work-related accident: "When asked if he could say the employee's August 1996 injury was a substantial factor in the employee's continuing need for medical treatment, Dr. Peterson testified ... 'I can't discount it.'" Robinson's situation is aggravated, and he is permanently impaired. To say "no objective medical evidence" exists ignores evidence in the record.